IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ATI INDUSTRIAL AUTOMATION, INC.,   )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   No. 1:09CV471
                                    )
APPLIED ROBOTICS, INC.,             )
                                    )
            Defendant.              )

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Motion to Dismiss, or Alternatively, to Transfer filed by Defendant Applied Robotics, Inc. ("ARI") (Docket Entry 24). ARI seeks dismissal of this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); alternatively, ARI requests a transfer of this action to the Northern District of New York under 28 U.S.C. § 1406(a). (Id. at 1.)[1] Plaintiff ATI Industrial Automation, Inc. ("ATI") disputes ARI's claims regarding lack of personal jurisdiction and improper venue; as a fall-back position, ATI asks the Court to "transfer this case to the District of South Carolina or, in the alternative, to permit ATI to conduct jurisdictional

---

[1] A court may not transfer an action under the statute cited by ARI unless it finds that the plaintiff "la[id] venue in the wrong division or district," 28 U.S.C. § 1406(a). That provision thus differs from another transfer statute, not invoked by ARI, which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," 28 U.S.C. § 1404(a). As this Court (per United States District Judge Frank W. Bullock, Jr.) has recognized, in patent cases involving corporate defendants, the issue of proper venue for purposes of § 1406(a) merges with the issue of personal jurisdiction. See Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., 304 F. Supp. 2d 769, 770-71 (M.D.N.C. 2004) (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1584 (Fed. Cir. 1990)).

discovery." (Docket Entry 29 at 4.)[2]  For the reasons that follow, the Court finds jurisdictional discovery appropriate and will defer the remaining issues until completion of said discovery.[3]

## I. BACKGROUND

"ATI is a North Carolina corporation whose principal office is located in Apex, North Carolina." (Docket Entry 20, ¶ 1.) ATI's Amended Complaint seeks to enforce patents concerning a device that serves as "a mechanical interface between an industrial robot arm and a variety of tools, or end effectors, that may be attached to

---

[2] ATI grounded its alternative transfer request on 28 U.S.C §§ 1406(a) and 1631. (Docket Entry 29 at 12.) As set forth in the preceding footnote, the former statute only comes into play in this context if the Court finds a lack of personal jurisdiction, see Walter Kidde Portable Equip., 304 F. Supp. 2d at 770-71; the latter statute has the same limitation, see 28 U.S.C. § 1631 (restricting transfers to cases in which "court finds that there is a want of jurisdiction").

[3] The Court notes that ATI presented its alternative proposals in its Response to ARI's instant Motion, rather than in a motion of ATI's own, but characterized that course of action as "mov[ing] this Court" to transfer the case to the District of South Carolina or to allow jurisdictional discovery. (Docket Entry 29 at 12, 17.) The Local Rules of this Court require that "[e]ach motion shall be set out in a separate pleading." M.D.N.C. R. 7.3(a). The Court nonetheless will exercise its discretion to consider this matter. See M.D.N.C. R. 83.4 (authorizing Court to disregard matters presented in violation of Local Rules, but making such decisions discretionary). However, the Court will take this opportunity to direct both parties to pay closer attention to the Local Rules. For example, "[u]npublished decisions may be cited only if the unpublished decision is furnished to the court . . . when the brief is filed." M.D.N.C. R. 7.2(c). The parties, however, have cited unpublished decisions without attaching copies. (See, e.g., Docket Entry 25 at 7-8, 11; Docket Entry 29 at 4 n.1, 16.) In addition, "[e]ach statement of fact [in a brief] should be supported by reference to a part of the official record in the case." M.D.N.C. R. 7.2(a)(2). ATI failed to include record citations for a number of allegations in the "Statement of Facts" sections of its briefs. (See Docket Entry 17 at 1-3; Docket Entry 29 at 1-3.) ATI also extensively cited to items on ARI's website without providing copies of such materials, despite the fact that website content may change. (See Docket Entry 29 at 8-9 n.3-9.) This approach contravenes the Court's Local Rule mandating that, "[w]hen allegations of facts not appearing of record are relied upon to support a motion, . . . other pertinent documents then available shall accompany the motion." M.D.N.C. R. 7.3(e).

2

the robot arm to perform various tasks." (Id., ¶ 7.) ATI has alleged and presented documentation reflecting that it holds three United States Patents related to such "robotic tool-changers," Nos. 6,840,895 ("'895"), 7,027,893 ("'893")[4] and 7,328,086 ("'086"). (Id., ¶ 3; Docket Entry 32, Exs. A-C.) The '895 patent is described as "relat[ing] to a robotic tool changer with an improved safety interlock." (Docket Entry 32, Ex. A at 6.)[5] The '893 and '086 patents are identified as "relat[ing] to a robotic tool changer

---

[4] ATI refers to U.S. Patent No. 7,027,8<u>39</u> (rather than 7,027,8<u>93</u>) in its Amended Complaint and Response, but such references appear to arise from a transposition error as to the last two digits of the patent number. (<u>Compare</u> Docket Entry 20, ¶ 3 (using terms "'893 patent" and "'839 patent" interchangeably) and Docket Entry 29 at 2 (citing patent number "7,027,839" as "'893 patent'") <u>with</u> Docket Entry 32, Ex. B. (apparent copy of U.S. Patent No. 7,027,893).)

[5] ATI explained the significance of the '895 patent as follows:

> 7. . . . A robotic tool changer comprises two inter-coupling parts: a master device affixed to a robot arm, and a tool device affixed to a tool. To perform a particular task, a robot arm positions itself adjacent a tool, typically stored in a tool stand, and engages a mechanical coupling mechanism of the tool changer to lock the tool to the robot arm. To perform a different task, the robot arm returns the tool to a tool stand, disengages the tool changer coupler, positions itself adjacent a different tool, and engages the tool changer coupler to couple the new tool to the robot arm.
>
> 8. A safety interlock . . . prevents the tool changer from disengaging the coupling mechanism if the tool is not positioned in a tool stand. Typical safety interlocks required external (manual) connection to a sensor . . . .
>
> 9. . . . ATI conceived and developed a robotic changer featuring a safety interlock having contacts on the tool device, and concomitant coupling mechanism control circuits. The tool side interlock . . . eliminates the need for manual connection to a tool stand seating sensor . . . .

(Docket Entry 20, ¶¶ 7-9.)

3

with a rapid-connect communication bus." (Docket Entry 32, Ex. B at 4, Ex. C at 4.)[6]

"ARI is a Delaware corporation with its principal place of business in Glenville, New York." (Docket Entry 14, ¶ 3.) "ARI manufactures and sells equipment, such as collision sensors and tool changers, for industrial robots." (Docket Entry 26, ¶ 8.) ATI asserts that ARI "copied" ATI's patented technology and is "importing, selling, offering for sale, and/or inducing others to import, sell, or offer for sale, robot tool changers including [that technology]." (Docket Entry 20, ¶¶ 12, 14, 20-21.)

According to evidence submitted by ARI, "ARI has no assets in North Carolina. It has no offices or other facilities, no personnel, no representatives or agents, is not registered to do business, has no agent for service of process, and has no license

---

[6] ATI described the nature of the '893 and '086 patents as follows:

15. Robot arms are often controlled by computers. A robot arm may communicate with one or more computers via a robotic system communications network . . . . In a robotic system communications network, each tool attached to a robot arm may have a unique identification, which must be transmitted via the network to a controller. Locating a network node on the tool device of a robotic tool changer is one way to provide the tool's identification to the network. However, this introduces delay as the tool device network node must power-up and initialize each time the tool is attached to a robot arm.

16. . . . ATI conceived and developed a robotic tool changer featuring a data communication bus between the master and tool devices that transfers a unique tool identification from robotic tool to a robotic system communication network node on the master device. This allows the network node to transmit the tool identity to a controller rapidly (e.g., within 250 msec) of the master device coupling with the tool device.

(Docket Entry 20, ¶¶ 15-16.)

to do business in North Carolina." (Docket Entry 14, ¶ 5.) ATI, however, has asserted that ARI maintains a website which "provides an interactive online environment where customers may view [ARI]'s products, review tutorials, complete a 'Solutions Worksheet' to communicate with [ARI] about a specific application challenge, tell [ARI] about customization needs, and locate [ARI's] contact information to communicate with [ARI] via phone or email." (Docket Entry 29 at 8-9 (internal footnotes omitted).)

In addition to its website marketing efforts, ARI has acknowledged that it sent a sales manager, Steve Listing, into North Carolina "to visit existing customers and potential customers in order to provide sales and/or technical support." (Docket Entry 26, ¶¶ 15-16.) According to evidence submitted by ARI, from 2004 to 2008, Listing made sixteen trips to North Carolina on behalf of ARI. (Docket Entry 27, ¶ 10 and Ex. A.)[7] ARI also admits that, after 2008, it sent another employee into North Carolina on two more occasions. (Docket Entry 31, ¶ 11.)

Evidence before the Court reflects that, from 2005 to 2009, ARI had approximately $750,000 in sales in North Carolina:

1) in 2005, ARI sold goods valued at approximately $300,000 to Comau Pico, which installed those products in Freightliner, Inc.'s Cleveland, North Carolina, facility (Docket Entry 17, Ex. D, ¶ 4);

2) in 2005, ARI sold $120,000 of additional parts to that same Cleveland facility (id.);

---

[7] Listing originally gave a sworn statement reporting substantially more customer visits in North Carolina. (See Docket Entry 17, Ex. D, ¶¶ 2, 3, 5, 7.)

3) from October 2006 to July 2009, ARI made sales of $301,240 to GKN Driveline North America, a company with facilities in Sanford, North Carolina (id., ¶¶ 5-6);

4) from May 2007 through July 2009, ARI had $15,443 in sales to Unifi Manufacturing Inc., a company headquartered in Greensboro, North Carolina, which operated facilities in Yadkinville, Madison, and Reidsville, North Carolina (id., ¶ 8);

5) in 2007, ARI sold $5,180 worth of products to Piedmont Technical, in Charlotte, North Carolina (id., ¶ 9); and

6) in 2008, ARI made $5,850 in sales to Pentair Water Pool & Spa, in Sanford, North Carolina (id., ¶ 10).[8]

On February 20, 2009, ATI's employee, Michael Coyle, visited BMW Manufacturing Co. in Greenville, South Carolina. (Docket Entry 17, Ex. A, ¶¶ 2, 6, 10.) While at that facility, Coyle and other ATI employees observed and photographed ARI's tool changers which allegedly infringed ATI's '895 patent. (Id., ¶ 10.) According to Listing, in addition to that facility, "AR[I] robotic tool changers having [an allegedly infringing tool-changer] on the tool unit are in use at LSP Automotive Systems LLC in Union, [South Carolina]." (Docket Entry 17, Ex. B, ¶ 4.)

---

[8] ARI does not dispute these figures, but instead states: "About $69,000 of ARI's sales were in the Middle District for fiscal year 2009 (October 1, 2008 through September 30, 2009), which amounts to about 1.1% of ARI's total revenues for that period. ARI's total sales for the entire State of North Carolina for the same period were only about 1.2% or $74,000. These percentages are representative of the total sales into North Carolina and the Middle District for the past three fiscal years." (Docket Entry 26, ¶ 13.)

6

On October 29, 2009, at 8:30 a.m., an ARI employee e-mailed a recipient or recipients not identified in the e-mail header in the documentation before the Court. (Docket Entry 17, Ex. C. at 1.) At 10:42 a.m., David Mollert of Fanuc Robotics[9] forwarded the message to Jean Rabatin (id.), an ATI employee (see Docket Entry 17, Ex. A, ¶ 10). In relevant part, the e-mail states:

> <u>I am the inside sales support for Mitch Yencha. As I believe you are aware Mitch is the representative for Applied Robotics, Inc.</u> You are currently in our database and it's our understanding that you are a key contact for tool changing in your plant (or specification development for <u>Fanuc Robotics</u>.[sic]).
>
> My reason for contacting you is to verify that you want to remain in our database in an effort to keep you updated on new releases and any other appropriate future tooling developments. We have had under development and testing for the past year a new family of <u>tool changers</u> ranging from 150Kg to over 1000Kg. <u>In November we will be officially releasing this product family</u>. . . .
>
> Thank you, <u>I look forward to your earliest reply so that I can make sure you receive the proper information on the release of our new SmartChange system</u>.
>
> I am also here to assist you in any way. Please visit the Applied Robotics' website at www.appliedrobotics.com and give me a call with any questions or comments you may have. You can reach me at (248) 299-0525 or via email at smorfino@appliedrobotics.com . . . .

(Docket Entry 17, Ex. C. at 1 (all but final emphasis added).)

---

[9] ATI asserts that the e-mail came to Fanuc Robotics's North Carolina office. (Docket Entry 29 at 3.) ARI points to the failure of ATI to submit "proof that the email was actually received by a Fanuc [Robotics] employee in North Carolina," but does not deny sending the e-mail to Fanuc Robotics's North Carolina office. (Docket Entry 30 at 4.)

According to ARI, ATI's claim of infringement of the '895 patent relates to ARI's "Tool Side Interlock" device and ATI's allegations of infringement regarding the '893 and '086 patents relate to components ARI calls the "SmartComm System." (Docket Entry 26, ¶ 10.)[10] ARI asserts that it "has not offered to sell or sold any [Tool Side Interlock] or SmartComm Systems in the State of North Carolina." (Docket Entry 26, ¶ 11.)[11]

## II. DISCUSSION

ATI requests that, should the Court find personal jurisdiction lacking on the current record, the Court nonetheless refrain from dismissing the case or transferring it to the Northern District of New York (as ARI proposes); instead, ATI asks the Court to "transfer this case to the District of South Carolina or, in the alternative, to permit ATI to conduct jurisdictional discovery." (Docket Entry 29 at 4.) In the interest of judicial economy, the Court first considers the propriety of jurisdictional discovery.

### A. Standard for Jurisdictional Discovery

This Court must follow the precedent of the United States Court of Appeals for the Federal Circuit in "resolving issues intimately related to substantive patent law." Hanamint Corp., Inc. v. Alliant Mktg. Grp., LLC, 481 F. Supp. 2d 444, 449 (M.D.N.C. 2007) (Beaty, C.J.) (internal quotation marks omitted). The

---

[10] ARI reports that the "SmartComm System" was "introduced in November 2009 . . . ." (Docket Entry 26, ¶ 12.)

[11] The record does not make clear whether the "SmartChange system" referenced in the above-quoted e-mail includes the "Tool Side Interlock" device and/or the "SmartComm System."

8

Federal Circuit has declared that, in ruling on the existence of personal jurisdiction in a patent case, courts must "apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of patent laws." Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (internal quotation marks omitted). Under Federal Circuit authority, "'[d]etermining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.'" Id. at 1329 (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). The North Carolina Supreme Court has held that, in enacting a long-arm statute, North Carolina's "General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676 (1977). Under such circumstances, the "jurisdictional analysis collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." Avocent Huntsville Corp., 552 F.3d at 1329.

"'[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316

(1945)) (brackets in original). Stated another way, "'there [must] be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' . . . '[A] defendant [may] not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" <u>Id.</u> (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), and <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985), respectively).

"Consistent with these principles, the Supreme Court has drawn a distinction between 'specific' jurisdiction and 'general' jurisdiction." <u>Id.</u> at 1330. "To establish specific jurisdiction, a plaintiff must demonstrate that the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." <u>Id.</u> (internal citations and quotation marks omitted). "To establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden. Specifically, where a plaintiff's claims do not arise out of or relate to the defendant's contacts with the forum State, '[a court] must explore the nature of the defendant's contacts with the forum State to determine whether they constitute continuous and systematic general business contacts.'" <u>Id.</u> (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984)) (brackets and ellipses from original omitted).

"In addition to the foregoing general principles of 'specific' and 'general' jurisdiction, the Supreme Court has also commented on the amenability to suit of persons engaged in activities that result in the flow of goods in commerce." Id. Specifically, the Supreme Court has observed that a "'forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "Significant confusion [exists] . . . regarding whether or not the placement of a product into the stream of commerce, without more, may serve as an act of the defendant purposefully directed toward the forum State." Id. at 1330-31 (internal brackets, emphasis, and quotation marks omitted). The Federal Circuit has not resolved that issue or the question of "whether contacts based solely on the 'stream of commerce' may suffice to establish *general* jurisdiction [or only specific jurisdiction]," id. at 1331 (emphasis in original). See id. at 1331-32.

Although the underlying issue of whether personal jurisdiction exists in this case requires application of Federal Circuit precedent, the Federal Circuit has stated that the propriety of jurisdictional discovery concerns "an issue not unique to patent law" and therefore that "the law of the regional circuit" governs. Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1371 (Fed. Cir. 2010) (internal quotation marks

11

omitted).  With respect to jurisdictional discovery, the United States Court of Appeals for the Fourth Circuit has declared that:

> Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted.  At the same time, however, district courts have broad discretion in their resolution of discovery problems that arise in cases pending before them.  When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.

Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc., 334 F.3d 390, 402 (4th Cir. 2003) (internal quotation marks, brackets and citations omitted).  A court also may deny jurisdictional discovery where the proposed line of inquiry would not alter the analysis of the personal jurisdiction issue.  Id.  However, "[w]hen plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988) (Eliason, M.J.).

B.  Analysis of Propriety of Jurisdictional Discovery

In support of its position that general personal jurisdiction exists in this case, ATI focuses on the following factors:

> [ARI] has a number of customers in the Middle District.  [ARI] marketed the infringing products in North Carolina.  It conducts hundreds of thousands of dollars of sales into North Carolina.  It directs advertising to North Carolina, and has an interactive website that its North Carolina customers can use to communicate with [ARI].

(Docket Entry 29 at 9.)  ATI requests discovery related to ARI's: "North Carolina advertising and solicitation"; "technical support and/or sales visits within the [sic] North Carolina"; and "ARI's sales into the [sic] North Carolina, including sales from [ARI]'s distributors." (Docket Entry 29 at 18.)[12]

### 1. Advertising and Solicitation

ATI contends that the October 29, 2009 e-mail contradicts ARI's assertion that ARI "'does not and has not targeted North Carolina in any advertising for any of its goods and services.'" (Docket Entry 29 at 18 (quoting Docket Entry 25 at 9.)  According to ARI, "[t]his email was not directed to and did not target Fanuc [Robotics], but rather, was a nationwide advertisement sent by [ARI] to more than 60 other recipients across the United States." (Docket Entry 31, ¶ 10 (cited in Docket Entry 30 at 9).)  The e-mail in the record does not identify the intended recipients and ARI has provided no documentation to support its declaration on this point.  Moreover, the body of the e-mail in the record specifically references Fanuc Robotics by name, but no other companies.  (See Docket Entry 17, Ex. C at 1.)

Under these circumstances, the Court finds a sufficient basis for ATI to proceed with discovery regarding the extent of ARI's advertising and solicitation within North Carolina.

---

[12] In its Response, ATI actually states that it seeks discovery regarding "sales from <u>ATI's</u> distributors."  (Docket Entry 29 at 18 (emphasis added).)  Given the surrounding context, the reference to "ATI's distributors" (rather than "ARI's distributors") appears to represent a scrivener's error.

### 2. Sales and Sales/Support Contacts

According to ARI, it "has disclosed all sales and/or technical support visits by ARI employees into North Carolina from 2001 to present." (Docket Entry 30 at 9 (citing Docket Entry 27, ¶¶ 2-10; Docket Entry 26, ¶ 22; Docket Entry 31, ¶ 11).) As noted in the Background section, Listing's sworn account of the number of visits he made to North Carolina has changed during the course of this litigation. (Compare Docket Entry 27, ¶ 10 with Docket Entry Docket Entry 17, Ex. D, ¶¶ 3, 5.) Moreover, the record does not reflect what contacts, short of physical visits, Listing and/or other ARI employees had with North Carolina businesses during the relevant period. Further, as set forth in the Background Section, ARI has given a somewhat vague and incomplete account of what percentage of its total sales for the period from 2005 to 2009 its sales in North Carolina represented. (See Docket Entry 26, ¶ 13.)

As a result, ATI has a valid need to conduct discovery regarding the extent and nature of ARI's sales and sales/support contacts with North Carolina.

### 3. Sales through Distributors/Integrators

ATI asserts that ARI "does significant business through its distributors . . . ." (Docket Entry 29 at 18.) ARI does not appear to dispute this fact, but instead avers that it "maintains no control over the distribution of the products and components it sells to third party integrators and distributors, including Comau Pico, and makes no effort to exert any such control." (Docket Entry 31, ¶ 14.) At the same time, ARI states that, apart from the

single transaction with Comau Pico set out in the Background section, "there have been no sales by ARI's third party distributors or integrators of ARI products or components into the State of North Carolina." (Id., ¶ 13.) ARI has not explained how, on the one hand, it has no control over where distributors/integrators send its products, but, on the other hand, it has definitive knowledge that none of its products have come into North Carolina through such distributors/integrators.

Given this tension and the fact that the Federal Circuit has not resolved whether the "stream of commerce" theory applies to assertions of general personal jurisdiction, see Avocent Huntsville Corp., 552 F.3d at 1331-32, grounds exist for ATI to conduct discovery regarding ARI's sales to integrators/distributors to identify possible deliveries of ARI's products into North Carolina.

## III.  CONCLUSION

The record warrants jurisdictional discovery on the subjects requested by ATI.  The Court therefore will defer action on ARI's motion seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) or, alternatively, transfer to the Northern District of New York under 28 U.S.C. § 1406(a), until both parties have had an opportunity to submit supplemental materials regarding matters identified during such jurisdictional discovery.

**IT IS THEREFORE ORDERED** that ATI's request for jurisdictional discovery (Docket Entry 29 at 17-18) is **GRANTED** and further action on ARI's Motion to Dismiss, or Alternatively, to Transfer (Docket Entry 24) is **DEFERRED.**

**IT IS FURTHER ORDERED** that the following deadlines will apply:

1) the parties shall complete jurisdictional discovery on or before March 4, 2011;

2) on or before March 18, 2011, ATI may file a brief of no more than ten (10) pages supplementing its Response (Docket Entry 29), regarding matters identified during such discovery; and

3) on or before March 25, 2011, ATI may file a brief of no more than five (5) pages supplementing its Reply (Docket Entry 30), regarding matters raised in ATI's supplemental brief.

/s/ L. Patrick Auld  
**L. Patrick Auld**  
**United States Magistrate Judge**

December 29, 2010