IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ATI INDUSTRIAL AUTOMATION, INC.,  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )   1:09CV471
                                  )
APPLIED ROBOTICS, INC.,           )
                                  )
            Defendant.            )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Joint Renewed Motion for Impoundment (Docket Entry 48) filed by Plaintiff ATI Industrial Automation, Inc. ("ATI") and Defendant Applied Robotics, Inc. ("ARI"). For the reasons that follow, the Court will grant said motion.

**I. BACKGROUND**

ATI's Amended Complaint seeks to enforce patents concerning a device that serves as "a mechanical interface between an industrial robot arm and a variety of tools, or end effectors, that may be attached to the robot arm to perform various tasks." (Docket Entry 20, ¶ 7.) ARI filed a "Motion to Dismiss, or Alternatively, to Transfer" (Docket Entry 24) and, in support thereof, a "Declaration of Clifford Annis" (Docket Entry 26) and "Declaration of Steve Listing" (Docket Entry 27). ATI responded (Docket Entry 29) and ARI replied (Docket Entry 30).

Via said motion, ARI sought dismissal of this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); alternatively, ARI requested transfer

of this action to the Northern District of New York under 28 U.S.C. § 1406(a). (Docket Entry 24 at 1.) ATI contended that, should the Court find personal jurisdiction lacking, the Court should nonetheless refrain from dismissing the case or transferring it to the Northern District of New York (as ARI proposes); instead, ATI asked the Court to "transfer this case to the District of South Carolina or, in the alternative, to permit ATI to conduct jurisdictional discovery." (Docket Entry 29 at 4.)

The Court granted ATI's request for jurisdictional discovery and deferred further action on ARI's motion to dismiss. (Docket Entry 35 at 15.) In addition, the Court approved a Consent Protective Order to which both parties stipulated. (Docket Entry 37.) Consistent with that protective order, ATI filed a Motion for Impoundment (Docket Entry 41), a document titled "Notice of Filing Under Seal" (Docket Entry 38), an Affidavit of Karen S. Boardman (Docket Entry 39), and a "Supplemental Memorandum Opposing Defendant's Motion to Dismiss" (Docket Entry 40).

In the Motion for Impoundment, ATI moved "to seal documents provided to [ATI] by [ARI] under the terms of the protective order. . . . Although [ATI] requested [ARI] lower its designations, [ARI] refused." (Docket Entry 41 at 1.) Specifically, ATI sought to file under seal three categories of documents:

(1) "[e]xcerpts from the Rule 30(b)(6) Deposition of Applied Robotics with Clifford Annis as its designee (and associated exhibits)" (id. at 1), in particular, Exhibits 4, 5, 7, 11, 14, 15, 19-26, 28, 29, 33, 34, 38-40 (id. at 2-3);

(2) redacted portions of the Affidavit of Karen S. Boardman and exhibits A, E-V, and X (id. at 3-4); and

(3) ATI's Supplemental Memorandum (id. at 4).

The Court denied the foregoing motion for impoundment because: (1) ATI failed to "fil[e] under seal the materials that it seeks to keep secret" and sought to seal documents "which [did] not appear to require such secrecy" (Docket Entry 46 at 11-12); (2) ATI did not indicate that certain materials were "subject to any confidentiality or non-disclosure agreements" (id. at 12); (3) ATI failed to explain "why the public should be denied access to [] materials, despite the public filing of other apparently similar documents" (id. at 13); (4) "ATI [did] not address how disclosure of each document identified in the motion, could potentially harm ARI" (id. at 14-15); and (5) "ATI [did] not discuss why less drastic alternatives . . . would be inappropriate" (id. at 15). Therefore, the Court ordered that "ATI's Motion for Impoundment (Docket Entry 41) is **DENIED** without prejudice to the parties filing a Joint Renewed Motion for Impoundment that addresses the matters discussed in this Memorandum Opinion and Order for each document identified in the motion as requiring sealing." (Docket Entry 46 at 15 (emphasis added).)

The parties now have filed a Joint Renewed Motion for Impoundment (Docket Entry 48) and a supporting brief (Docket Entry 49). The motion states that "the parties move the Court to seal Exhibits 11, 26 and 35 to the Deposition of Clifford Annis ("Annis Deposition") and Exhibits A, O-Q and S to the Affidavit of Karen S.

Boardman ("Boardman Affidavit") . . . ." (Docket Entry 48 at 1.)

In their brief, the parties briefly discuss other exhibits:

> [T]he parties have agreed to file Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit on the public record, with some agreed redactions of specific customer contacts and customers of Defendant ARI that are unknown to Plaintiff ATI. Defendant ARI stipulates that the emails of Exhibits 4, 28-29, 38-39, and 40 to the Annis Deposition and Exhibits E-N, U-V and X to the Boardman Affidavit involve communications between Defendant ARI and companies located in North Carolina or having a plant in North Carolina. Regarding the Boardman Affidavit, the redacted customer contacts and customer names are the same names that were redacted in the referenced exhibits.

(Docket Entry 49 at 3-4.)

In addition, ATI filed:

(1) a document titled "Notice of Filing" which includes ATI's unredacted Supplemental Memorandum (Docket Entry 50-1),[1] excerpts from the Annis Deposition (Docket Entry 50-2), and, in connection with that deposition, unredacted copies of Exhibits 5, 7, 11, 14, 15, 19-25, and 33 (Docket Entries 50-4 - 50-17, 50-20), as well as redacted copies of Exhibits 4, 28, 29, 34, and 38-40 (Docket Entries 50-3, 50-18, 50-19, 50-21 - 50-24);

(2) a redacted copy of the Boardman Affidavit (Docket Entry 51), unredacted copies of Exhibits B, C, D, R, T, and W (Docket Entries 51-1 - 51-3, 51-14, 51-15, 51-18),[2] and redacted copies of

---

[1] The Court refers to the exhibits in the Notice of Filing by the Case Management/Electronic Case Filing ("CM/ECF") system docket numbers which appear in the footer of the document. (See Docket Entries 50, 50-1 - 50-24.)

[2] For purposes of clarity, the Court refers to the exhibits attached to the Affidavit of Karen S. Boardman by the CM/ECF system docket numbers which appear
(continued...)

Exhibits E-N, U, V, and X (Docket Entries 51-4 - 51-13, 51-16, 51-17, 51-19); and

(3) Exhibits 11, 26 and 35 to Annis's deposition (Docket Entries 52, 53 & 54), which were filed under seal, and Exhibits A, O, P, Q, and S to Ms. Boardman's Affidavit (Docket Entries 55-59), which were also filed under seal.

Thereafter, ATI filed Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit, in an unredacted form, under seal. (See Docket Entries 62-82 (filed under seal).)

## II. DISCUSSION

In the Joint Renewed Motion for Impoundment, the parties move "to seal certain business sensitive documents provided to Plaintiff ATI by Defendant ARI under the terms of the Protective Order." (Docket Entry 48 at 1.)

### A. Standard for Sealing Documents

Federal Rule of Civil Procedure 26(c) states in relevant part that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . . .
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and

---

[2](...continued)
in the footer of the document. (See Docket Entries 50, 50-1 - 50-24.)

> (H) <u>requiring that the parties</u> simultaneously <u>file specified documents or information in sealed envelopes, to be opened as the court directs</u>.

Fed. R. Civ. P. 26(c) (emphasis added).

The United States Court of Appeals for the Fourth Circuit has recognized that "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispostiive motion." <u>Rushford v. The New Yorker Magazine, Inc.</u>, 846 F.2d 249, 253 (4th Cir. 1988). However, the authority granted to a court under Rule 26(c) to require special handling of information gathered during discovery is constrained by the public's right of access to judicial records. <u>See</u> <u>Level 3 Communications, LLC v. Limelight Networks, Inc.</u>, 611 F. Supp. 2d 572, 576 (E.D. Va. 2009) ("There is a highly-developed body of case law governing the handling of discovery documents and other materials filed with courts under seal in civil cases. For current purposes, this case law can be divided analytically into two categories. One body of case law relates to the protected status of documents produced in pre-trial discovery pursuant to a stipulated, court-approved protective order under Rule 26(c) of the Federal Rules of Civil Procedure. The second body of case law governs the public availability of materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been.").

This constraint arises because "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978).[3] "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dept. of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted).[4]

Before considering whether a constitutional or only a common law right of access exists, however, a court must assess whether the materials at issue actually constitute "judicial documents and records," id. at 180. In this regard, the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the

---

[3] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases. See Rushford, 846 F.2d at 253 & n.4.

[4] Moreover, "[t]he common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." Rushford, 846 F.2d at 253.

-7-

document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)). Accordingly, in any given case, some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." Virginia Dept. of State Police, 386 F.3d at 576. Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Id. (internal citation omitted). "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Id. (internal citations and quotation marks omitted). See also Moussaoui, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document,

the source of the right of access (if any such right exists).  As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part." (internal citation omitted) (emphasis added)).

The Fourth Circuit has recognized that the legal framework for sealing documents, described above, applies to determine whether a party may file a redacted document, i.e., a document sealed in part.  See Moussaoui, 65 Fed. Appx. at 889 ("As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part.").[5]  Thus, courts in the Fourth Circuit apply the legal framework for sealing where a party moves to file a redacted document.  See, e.g., Silicon Knights, Inc. v.

---

[5] Federal Civil Procedure Rule 5.2, which governs redacted filings, provides:

> Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
> > (1) the last four digits of the social-security number and taxpayer-identification number;
> >
> > (2) the year of the individual's birth;
> >
> > (3) the minor's initials; and
> >
> > (4) the last four digits of the financial-account number.

Fed. R. Civ. P. 5.2(a).  This Court's Local Rules incorporate a substantially similar rule.  See M.D.N.C. R. 7.1(b) (providing for redaction of personal data identifiers).

Epic Games, Inc., No. 5:07-CV-275-D, 2011 U.S. Dist. LEXIS 26720, at *3-7 (E.D.N.C. Mar. 15, 2011) (unpublished) (granting parties' motions to seal documents or portions thereof containing alleged trade secrets); Wolfe v. Green, Civil Action No. 2:08-01023, 2010 U.S. Dist. LEXIS 132929, at *6-7 (S.D. W. Va. Dec. 15, 2010) (unpublished) (granting parties' joint motion to redact filings holding parties made necessary showing to address both common law and First Amendment rights of access); Bethesda Softworks, LLC v. Interplay Entertainment Corp., Civil Action No. DKC 09-2357, 2010 U.S. Dist. LEXIS 100769, at *26-29 (D. Md. Sept. 23, 2010) (unpublished) (treating plaintiff's motion to redact transcript as a motion to seal).

B. Trade Secret

Trade secret protection generally arises as a function of state law. Cf. Rohm and Haas Co. v. ADCO Chem. Co., 689 F.2d 424, 429 (3d Cir. 1982) ("A trade secret claim in the federal courts is governed not by federal common law but by state law.").[6] Thus, federal courts have referred to state law for purposes of defining a trade secret in the context of orders addressing public access. See, e.g., Pocht v. State Farm Mutual Auto. Ins. Co., Civ. 08-5015-KES, 2008 U.S. Dist. LEXIS 100389, at *20 (D.S.D. Dec. 11, 2008) (unpublished) ("Courts look to applicable state law to determine if the requested documents qualify as trade secrets." (citing In re

---

[6] The Economic Espionage Act of 1996 provides for criminal penalties for certain forms of trade secret misappropriation. See Pub. L. No. 104-294, § 1832, 110 Stat. 3489 (1996), codified at 18 U.S.C. §§ 1831-39.

-10-

Remington Arms Co., Inc., 952 F.2d 1029, 1033 (8th Cir. 1991))); Myrda v. Swift Transp. Co., Inc., Case No. 2:06 cv 123, 2007 U.S. Dist. LEXIS 51103, at *6 (N.D. Ind. July 13, 2007) (unpublished) ("In making the first inquiry [into whether the information sought to be protected is a trade secret or other form of confidential information,] the court looks to substantive state law to define trade secret." (citations omitted)); International Assoc. of Machinists and Aerospace Workers v. Werner-Matsuda, 390 F. Supp. 2d 479, 484-85 (D. Md. 2005) (granting motion to seal and examining state law to determine if proposed information constituted trade secret).

North Carolina's Trade Secrets Protection Act defines a trade secret as:

> "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3). The North Carolina Court of Appeals has identified six factors to "consider when determining whether an item is a trade secret":

> (1) the extent to which information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the

information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

Sunbelt Rentals, Inc. v. Head & Enquist Equip., L.L.C., 174 N.C. App. 49, 53, 620 S.E.2d 222, 226 (2005) (quoting State ex rel. Utils. Comm'n v. MCI, 132 N.C. App. 625, 634, 514 S.E.2d 276, 282 (1999)). The North Carolina Court of Appeals has also observed that, in "[a]pplying these factors, [North Carolina's] courts have found the following to constitute a trade secret: cost history information; price lists; and confidential customer lists, pricing formulas and bidding formulas." Id. (citations omitted). This Court also has recognized that "courts have found that special knowledge of customer needs and preferences is a trade secret." Philips Elec. N. Am. Corp. v. Hope, 631 F. Supp. 2d 705, 721 (M.D.N.C. 2009) (Schroeder, J.) (citing SunBelt, 174 N.C. App. at 54-56, 620 S.E.2d at 226-28).

### C. Analysis

The parties identify eight exhibits that they seek to seal including: "Exhibits 11, 26 and 35 to the [Annis] Deposition . . . and exhibits A, O-Q and S to the [Boardman] Affidavit . . . ." (Docket Entry 48 at 1.) They explain that "[t]he trade secret and other confidential information contained in the documents at issue . . . include customer information, specific customer product pricing and customer preferences." (Docket Entry 49 at 1-2.)

They describe the exhibits as follows:

(1) "Exhibit 11 to the Annis Deposition is a spreadsheet containing all of [ ] ARI's customers in North Carolina, including names, contact phone numbers, emails and addresses" and "pricing information about ARI products" (id. at 11);

(2) "Exhibit 26 to the Annis Deposition is an internal ARI email that lists customer names, specific ARI products purchased by the customers and the location of the customer and the specific product purchased" and "pricing information about ARI products" (id. at 12);

(3) "Exhibit 35 to the Annis Deposition is an email between ARI and an ARI customer" which "contains a specific proposal, including pricing, from ARI to one of its customers for specific products" and "ARI's specific consumer strategy" (id. at 13);

(4) "Exhibit A to the Boardman Affidavit is a spreadsheet identifying ARI's sales by customer" and "customers in North Carolina, prices for specific products sold to each customer, and total revenue made from these customers" (id.);

(5) "Exhibit O to the Boardman Affidavit is a specific sales order to a customer of ARI identifying pricing, customer names and consumer preferences" (id. at 14);

(6) "Exhibit P to the Boardman Affidavit is a spreadsheet identifying the return sales by part number and quantity shipped to ARI's customers in North Carolina" and "includes customer names and the quantity of the products purchased by ARI's customers in North Carolina" (id. at 15);

(7) "Exhibit Q to the Boardman Affidavit is a spreadsheet identifying payment and compensation to companies located in North Carolina" and "includes customer names and payment amounts to specific companies located in North Carolina" (id.); and

(8) "Exhibit S to the Boardman Affidavit is a list of ARI's customers in North Carolina" which "includes contact names, titles, addresses, phone numbers and email addresses of ARI's North Carolina customers" (id. at 16).

Initially, the Court observes that the instant joint motion to seal exhibits has been publicly docketed since June 1, 2011. (Docket Entry 48.) Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, but no opposition has been filed (see Docket Entries from June 1, 2011 to present). Accordingly, the Court concludes that, as to the motion at issue, the "public notice" prerequisite to entry of a sealing order has been satisfied. See Stone, 855 F.2d at 181 (discussing use of docketing to comply with procedural requirements for sealing).

Next, the Court must determine what, if any, public access right attaches to the items covered by the instant sealing requests. See Virginia Dept. of State Police, 386 F.3d at 576; Moussaoui, 65 Fed. Appx. at 889; In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4. The more rigorous First Amendment standard applies to attachments to dispositive motions. See Rushford, 846 F.2d at 252-53 ("Once the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status

of being raw fruits of discovery. . . . We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case." (internal quotation marks and citations omitted)). See also Scenera Research LLC v. Morris, Nos. 5:09-Cv-412-FL, 5:09-CV-439, 2011 U.S. Dist. LEXIS 14668, at *1-2 (E.D.N.C. Feb. 14, 2011) (unpublished) ("Because the documents sought to be sealed are related to dispositive motions, they are subject to a *First Amendment* right of access by the public." (italics in original) (citing Rushford, 846 F.2d at 253)); Walter Kiddie Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1:05CV01031, 2008 U.S. Dist. LEXIS 3426, at *2 (M.D.N.C. Jan. 16, 2008) (unpublished) (Tilley, J.) ("However, when this discovery rule is applied to seal documents used . . . in dispositive motions . . . a 'rigorous *First Amendment* standard' applies to protect the public's right to access." (italics in original) (citing Virginia Dept. of State Police, 386 F.3d at 576)). The foregoing eight exhibits thus are subject to the right of access granted by the First Amendment, because they were filed in connection with a motion to dismiss.

The Court finds that the exhibits identified in the Joint Renewed Motion for Impoundment constitute trade secrets. In general, the parties contend that all eight exhibits are "not publicly available [and are] maintained confidentially by Defendant ARI . . . ." (Docket Entry 49 at 11-16.) More specifically, each exhibit constitutes the type of information protected under North Carolina law: (1) Exhibit 11 is a confidential customer list (see

Docket Entry 49 at 11; Docket Entry 52 at 1-11 (filed under seal)); (2) Exhibit 26 is an internal e-mail providing pricing information and listing customers and their product choices (see Docket Entry 49 at 12; Docket Entry 53 at 1-8 (filed under seal)); (3) Exhibit 35 is a private e-mail exchange between ARI and a customer with a pricing bid for products (Docket Entry 49 at 13; Docket Entry 54 at 1 (filed under seal)); (4) Exhibit A is another variation of a secret customer list incorporating price lists and preferences for ARI products (Docket Entry 49 at 13; Docket Entry 55 at 1-31 (filed under seal)); (5) Exhibit O is a document which describes a customer's confidential order from ARI and lists prices that ARI charged (Docket Entry 49 at 14; Docket Entry 56 (filed under seal)); (6) Exhibit P is another internal customer list describing their purchases of ARI products (Docket Entry 49 at 15; Docket Entry 57 at 1-7 (filed under seal)); (7) Exhibit Q is yet another confidential list of purchasers of ARI products (including amounts paid for unidentified products) (Docket Entry 49 at 15; Docket Entry 58 at 1-5 (filed under seal)); and (8) Exhibit S constitutes a non-public ARI customer contact list (Docket Entry 49 at 16; Docket Entry 59 at 1 (filed under seal)). North Carolina recognizes that trade secrets include confidential customer lists, price lists and information connected with bids for goods, Sunbelt, 174 N.C. App. at 53, 620 S.E.2d at 226, and "special knowledge of customer needs and preferences[,]" Philips Elec., 631 F. Supp. 2d at 721 (citation omitted). This description of trade secrets encompasses the eight exhibits identified in the instant Motion.

The Court finds that sealing is appropriate for the eight exhibits, because the parties seek to protect ARI's trade secrets. The Fourth Circuit has recognized that:

> One exception to the public's right of access is where such access to judicial records could provide a "source[] of business information that might harm a litigant's competitive standing." [Nixon, 435 U.S. at 598.] Other courts have specifically recognized an exception to the public's right of access when a case involves trade secrets. *Valley Broadcasting v. United States District Court, 798 F.2d 1289, 1294 (9th Cir. 1986); In re Iowa Freedom of Information Council, 724 F.2d 658 (8th Cir. 1983); Brown & Williamson Tobacco Co. v. FTC, 710 F.2d 1165, 1180 (6th Cir. 1983).*

Woven Elec. Corp. v. Advanced Group, Inc., Nos. 89-1580, 89-1588, 1991 U.S. App. LEXIS 6004, at *17 (4th Cir. Apr. 15, 1991) (unpublished) (first bracket and italics in original). The parties, utilizing variations on four arguments, contend that making the exhibits public records would harm ARI in that: (1) "[disclosure] would provide direct competitors . . . with a list of specific personal contacts and customers developed by [] ARI through the years" (Docket Entry 49 at 11, 13-16); (2) disclosure would "provid[e] a competitive advantage to direct competitors in the industry, and economic harm and unnecessary burden to ARI" (id. at 12, 13-16); (3) "[w]ith this information direct competitors could specifically target specific customer preferences based on ARI products already purchased from ARI" (id. at 12, 13); and (4) publicly docketing the information would "provide direct competitors . . . with pricing information for specific customers" (id. at 13-16). Therefore, the Court finds that ARI's interests in

-17-

maintaining the secrecy of trade secrets described in the exhibits overcomes the public's First Amendment right of access.

Alternatives to sealing the entirety of the eight exhibits do not exist, because the secret information pervades each document. Thus, filing redacted copies of these documents would be impracticable, and the documents, in a redacted form, would likewise be incomprehensible. Therefore, the Court finds the parties' filing of the eight exhibits under seal is appropriate.

The parties explain Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit have been redacted to remove "specific customer contacts and customers of [] ARI that are unknown to [] ATI" and the Boardman Affidavit has been redacted to the same extent that "customer contacts and customer names are the same names that were redacted in the referenced exhibits." (Docket Entry 49 at 3-4.) The Court construes the Joint Renewed Motion for Impoundment as requesting to seal in part Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit.

The redacted portions of Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit constitute customer names, portions of e-mail addresses and other contact information. (<u>See</u> Docket Entries 62-82 (filed under seal).) For the same reasons discussed above, this information warrants protection as an ARI trade secret which overcomes the public's First Amendment right of

access. Moreover, having examined the documents, the Court finds that the parties' limited redactions are narrowly tailored to maintain the secrecy of only that information which constitutes a trade secret. Therefore, partial sealing of these documents through the use of redactions is appropriate.

Accordingly, the Court orders that the parties' Joint Motion for Impoundment (Docket Entry 48) is granted and that the parties may file redacted copies of Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit.

### III. CONCLUSION

The Court observes that the public has had sufficient time to intervene to oppose the Joint Motion for Impoundment. Moreover, the Court finds that the documents identified in the Joint Motion for Impoundment incorporate trade secrets and that ARI's interest in protecting those trade secrets overcomes the public's First Amendment right to access those documents.

**IT IS THEREFORE ORDERED** that the parties' Joint Motion for Impoundment (Docket Entry 48) is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties may file redacted copies of Exhibits 4, 28-29, 34, and 38-40 to the Annis Deposition, Exhibits E-N, U-V and X to the Boardman Affidavit, and the Boardman Affidavit on the docket and that unredacted copies of those documents shall remain under seal.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 12, 2011