# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ATI INDUSTRIAL AUTOMATION, INC.,  )
                                  )
                Plaintiff,        )
                                  )
     v.                           )    1:09CV471
                                  )
APPLIED ROBOTICS, INC.,           )
                                  )
                Defendant.        )
```

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel. (Docket Entry 158.) For the reasons that follow, the Court will grant Plaintiff's instant Motion.

## I. BACKGROUND

Plaintiff's Second Amended Complaint alleges that Defendant has infringed three of its utility patents for robotic tool changers and that Defendant's design patent is invalid as functional. (Docket Entry 154 at 4-9.)[1] On February 6, 2014, Plaintiff served on Defendant interrogatories and requests for admission related to Defendant's design patent. (Docket Entry 163 at 2.) Defendant responded with objections on March 11, 2014. (Docket Entry 159-1 at 1-16.)]

---

[1] In response to Defendant's assertion of a counterclaim against Plaintiff for infringement of its design patent, Plaintiff raised an affirmative defense of invalidity and, with the Court's permission, amended its Complaint to bring a claim for design patent invalidity. (See Docket Entry 153 at 1-2, 8.)

According to Defendant, it "did not merely object to the contested requests, but provided responsive answers to each request subject to its objections." (Docket Entry 163 at 2.) Plaintiff disagreed and, on March 14, 2014, sent Defendant a letter characterizing Defendant's answers as "non-responsive" and requesting supplementation. (Docket Entry 159-2 at 1.) Plaintiff further proposed that the Parties meet and confer as to the disagreement via teleconference. (Id. at 2.) Defendant then responded by letter dated March 18, 2014, maintaining its objections and asserting the sufficiency and responsiveness of its answers. (Docket Entry 159-3 at 2.) Defendant's letter did not address Plaintiff's request to meet and confer. (See id. at 1-2.)

Discovery for design patent claim construction subsequently closed on March 25, 2014. (Docket Entry 124.) Plaintiff filed the instant Motion on May 7, 2014. (Docket Entry 158.) Defendant responded (Docket Entry 163) and Plaintiff replied (Docket Entry 168).

## II. DISCUSSION

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's note, 1983 amend. Accordingly, under the Federal Rules of Civil Procedure, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or</u>

defense . . . . " Fed. R. Civ. P. 26(b)(1) (emphasis added). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader."). Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's note, 2000 amend., subdiv. (b)(1).

Consistent with the foregoing principles, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003). "A party seeking discovery may move for an order compelling an answer [when] . . . a party fails to answer an interrogatory submitted under Rule 33[.]" Fed. R. Civ. P. 37(a)(3)(B)(iii). Similarly, in connection

defense . . . . " Fed. R. Civ. P. 26(b)(1) (emphasis added). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader."). Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's note, 2000 amend., subdiv. (b)(1).

Consistent with the foregoing principles, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003). "A party seeking discovery may move for an order compelling an answer [when] . . . a party fails to answer an interrogatory submitted under Rule 33[.]" Fed. R. Civ. P. 37(a)(3)(B)(iii). Similarly, in connection

defense . . . . " Fed. R. Civ. P. 26(b)(1) (emphasis added). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader."). Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's note, 2000 amend., subdiv. (b)(1).

Consistent with the foregoing principles, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003). "A party seeking discovery may move for an order compelling an answer [when] . . . a party fails to answer an interrogatory submitted under Rule 33[.]" Fed. R. Civ. P. 37(a)(3)(B)(iii). Similarly, in connection

with requests for admission, "[t]he requesting party may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). District judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243-44 (M.D.N.C. 2010) (citing cases).

In this case, as an initial matter, Defendant contends that, because Plaintiff waited roughly six weeks after the close of discovery for design patent claim construction to file the instant Motion, it constitutes "nothing more than a strategic tactic to gain leverage in a related motion [for consolidation of the claim construction hearings]." (Docket Entry 163 at 3.) In that regard, Defendant further asserts that "Plaintiff, apparently realizing that its argument in opposition to the Motion for Consolidation was not credible absent a motion to compel, filed the instant [M]otion the night before the hearing [as to Defendant's Motion for Consolidation]." (Id. at 4.)[2] Given that (as discussed below)

---

[2] Defendant, however, does not assert that Plaintiff's instant Motion qualifies as untimely or that the Court should deny the instant Motion on that basis. (See Docket Entry 163 at 1-11.) Neither the Federal Rules of Civil Procedure nor this Court's Local Rules provide a specific timeframe in which a party must file a motion to compel. See Fed. R. Civ. P. 37(a); M.D.N.C. R. 37.1. In this Court, "[g]enerally, a party must file a motion to compel before the close of discovery in order for that motion to be deemed
(continued...)

Plaintiff had good reason to move to compel and Defendant's discovery responses, in fact, require supplementation, the Court rejects the contention that Plaintiff's instant Motion reflects "nothing more than a strategic tactic to gain leverage in a related motion" (id. at 3).

---

(...continued)
timely." Lane v. Lucent Techs., Inc., No. 1:04CV789, 2007 WL 2079879, at *3 (M.D.N.C. July 17, 2007) (unpublished) (Osteen, Sr., J.). However, the Fourth Circuit has granted "substantial discretion to a district court in managing discovery . . . [including the] discretion to consider an untimely motion to compel if the movant 'offer[s] an acceptable explanation for [the motion's] tardiness.'" United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quoting Spencer Med. Assocs. v. Commissioner of Internal Revenue, 155 F.3d 268, 273 (4th Cir. 1998)). Morever, numerous courts have accepted a motion to compel filed beyond the discovery deadline when warranted by the circumstances. See, e.g., Centennial Archaeology, Inc. v. AECOM, Inc., 688 F.3d 673, 682 (10th Cir. 2012) (affirming district court's decision to entertain motion to compel filed over three months following discovery deadline where movant sought voluntary compliance); Blanchard v. EdgeMark Fin. Corp., 192 F.R.D. 233, 235-36 (N.D. Ill. 2000) (excusing untimeliness of motion to compel filed one month following discovery deadline where movant's delay resulted, in part, from meeting other court-ordered deadlines). In the instant case, Plaintiff contends the delay resulted from "addressing the court ordered deadlines for utility patent claim construction and mediation." (Docket Entry 168 at 1 n.2.) The Court notes that the record does reflect extensive briefing on other matters related to this case during the period at issue. (See Docket Entries dated Mar. 18, 2014, to May 7, 2014.) Although the need to meet other court-imposed deadlines might not have ordinarily justified the filing of a motion to compel outside the discovery period, Defendant has not asserted the untimeliness of Plaintiff's instant Motion as grounds for denial of the instant Motion and, further, the claim construction hearing will not occur until October 14, 2014 (see Docket Entry dated May 8, 2014), after which the Scheduling Order provides for additional fact discovery (see Docket Entry dated May 2, 2013). Under these circumstances, the Court will consider the merits of Plaintiff's instant Motion.

A.  Plaintiff's Interrogatories

Plaintiff's interrogatories numbered 22 through 24 ask Defendant to identify the elements of its D500,510 design which it considers functional, the elements which it considers ornamental, and the elements which it considers both functional and ornamental, respectively.  (Docket Entry 159-1 at 4-5.)  These interrogatories further request "the functions performed by each identified [functional] element" (id. at 4); "an explanation as to why each [ornamental] element should be considered ornamental, any function performed by that element, and documents regarding the same" (id.); and "an explanation as to why each element [designated as both functional and ornamental] is ornamental, how each element is functional, and documents regarding the same" (id. at 5).  In response, Defendant provided similar objections to each of these three interrogatories:

> [Defendant] objects to this interrogatory as irrelevant and an attempt to alter the standard for design patents which protect the overall appearance of the claimed design.  [Defendant] also objects to the word 'functional' on the basis that such word has multiple meanings including reference to a defense for design patent infringement which applies to the overall claimed design.  Design patents are directed to ornamental designs for utilitarian objects and thus are directed to such articles of manufacture.

(Id. at 4 (objecting to interrogatory no. 22); see also id. at 4-5 (objecting to interrogatory nos. 23-24).) Defendant further stated in similar fashion as to each interrogatory:

> Subject to the general and specific objections, [Defendant] contends that the overall design of D500,510 is not dictated solely by function and is thus non-functional, there are no features of the D500,510 that are dictated solely by function or by the use or purpose of the article, and that the features can be altered without adversely affecting the article's utility, and that all of the features of the D500,510 design are ornamental and not dictated solely by function.

(Id. at 5 (emphasis added) (responding to interrogatory no. 24); see also id. at 4-5 (objecting to interrogatory nos. 22-23).)

Plaintiff's instant Motion defends these interrogatories on the ground that "the Federal Circuit [has] noted that claim construction for design patents could include an identification by the court of functional elements." (Docket Entry 158 at 2 (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679-80 (Fed. Cir. 2008)).) As Plaintiff observes (see Docket Entry 159 at 3), the Federal Circuit recently upheld a district court's claim construction which "properly factored out the functional aspects of [Plaintiff's] design . . . . [because,] [b]y definition, the patented design is for a multifunction tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article," Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010). Accordingly, Plaintiff contends that, "[it]

-7-

has a right to know the bounds of [Defendant's] design patent claim, and to investigate functionality with regards to claim construction . . . . [and] its invalidity affirmative defense." (Docket Entry 158 at 2.)

In opposition, Defendant asserts that "the function of the article itself [i.e., the robotic tool changer] must not be confused with the 'functionality' of the design of the article itself, which is precisely what Plaintiff attempts to do." (Docket Entry 163 at 7-8.) Defendant further argues that, "[w]hile functionality may be considered on an element-by-element basis for purposes of claim construction, the functionality analysis for purposes of invalidity unequivocally applies to the claimed design **'as a whole.'**" (Id. at 10 (citing High Point Design, LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1315 (Fed. Cir. 2013)).) In this regard, Defendant appears to contend that, because the Court should consider the design as a whole in evaluating the invalid-as-functional defense to the design patent infringement claim, the Court should now protect Defendant from answering questions about any specific elements of that same design (as to any functions those elements may or may not perform). (See id.) Even assuming that Defendant has correctly interpreted the Federal Circuit's standard for design patent invalidity, Defendant has not shown that

an interrogatory which seeks information about the functionality of individual elements of a design bears no relevance to the functionality of the design as a whole.

Accordingly, the Court need not decide whether the disputed interrogatories adequately track the Federal Circuit's standard for design patent claim construction to find them relevant, because "relevancy at discovery is a far different matter from relevancy at trial," Elkins, 2004 WL 3249257, at *2. Furthermore, Defendant cannot withhold such requested information concerning its design patent on grounds that it does not agree with Plaintiff's theory of the case. See Wright, Miller, & Kane, 8B Federal Practice & Procedure, § 2168 (3d ed. 2001) ("A party may base interrogatories on its theory of the case. The interrogatories cannot be objected to because, on the interrogated party's theory, they are based on a false assumption."). Under these circumstances and given that Defendant (as the party resisting discovery) has the burden of persuasion, see Kinetic Concepts, 268 F.R.D. at 243-44, the Court concludes that Defendant's relevance objection does not excuse its resistance to Plaintiff's interrogatories.

Defendant further opposes Plaintiff's instant Motion on the basis that Defendant has "[s]ufficiently [a]nswered [e]ach [i]nterrogatory [s]ubject to its [o]bjections." (Docket Entry 163 at 5.) In this regard, Defendant characterizes its responses as complete because "'all of the features of the D500,510 design are

ornamental and <u>not dictated solely by function</u>.'" (<u>Id.</u> at 6 (quoting Docket Entry 159-1 at 5) (emphasis added).) However, Defendant's repeated use of the phrase "not dictated solely by function" renders its answers evasive and nonresponsive.

Even if no element of the patented design qualifies as "dictated <u>solely</u> by function," Defendant must address whether and to what extent any ornamental element may have a functional aspect.[3] Because Defendant's answers evade the clear intent of Plaintiff's interrogatories, they constitute no response at all. <u>See</u> Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.") In addition, as noted by Plaintiff, Defendant has failed to respond at all to particular

---

[3] The Federal Circuit has used the language "dictated solely by function" (or "governed solely by function") in considering whether patented designs as a whole qualify as invalid as functional, but it has not applied the term when considering individual elements of a design. <u>See, e.g.</u>, <u>Rosco, Inc. v. Mirror Lite Co.</u>, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ("[T]he design must not be governed solely by function, *i.e.*, that this is not the only possible form of the article that could perform its function." (citing <u>Seiko Epson Corp. v. Nu-Kote Int'l, Inc.</u>, 190 F.3d 1360, 1368 (Fed. Cir. 1999))); <u>Best Lock Corp. v. Ilco Unican Corp.</u>, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ("[I]f the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental."). Given that Plaintiff's interrogatories seek to determine the functional and ornamental aspects of individual elements of Defendant's design (not whether Defendant considers such elements to qualify as invalid as functional), Defendant's application of this language evades the plain meaning of Plaintiff's interrogatories.

components of Plaintiff's interrogatories; specifically, Defendant has not identified any individual elements of its design, it has not explained why all elements of its design qualify as ornamental, and it has identified no supporting documents. (See Docket Entry 158 at 3; Docket Entry 159-1 at 5.)

Under these circumstances, Defendant must supplement its answers to Plaintiff's interrogatories 22 through 24 to provide non-evasive and complete responses.

## B. Plaintiff's Requests for Admission

Plaintiff's requests for admission numbered eight through twelve seek to understand the functions and advantages of various components of the design for Defendant's product:

> REQUEST NO. 8: The hexagon design of the D500,510 allows a tool changer incorporating that design to handle more jobs at one station.
>
> . . . .
>
> REQUEST NO. 9: A tool changer with the hexagon design of the D500,510 accommodates more utilities compared to the prior art tool changers.
>
> . . . .
>
> REQUEST NO. 10: One advantage of tool changers incorporating the D500, 510 design is the simple coupling module adaptation made possible by the hexagonal body design.
>
> . . . .
>
> REQUEST NO. 11: The use of a six sided adaptor plate in a tool changer is functional.
>
> . . . .

> REQUEST NO. 12: Accessories may be mounted to the D500,510 design through the use of the recesses shown in Figure 5 of the Design Patent.

(Docket Entry 159-1 at 13-15.) Defendant objected to all five above-listed requests as "vague and ambiguous" (id.), citing (but providing no explanation for) its confusion as to certain terms used, including terms such as "the hexagon design of the D500,510" and "at one station" (see id. at 13-14). Defendant further objected to requests numbered ten and twelve "as irrelevant and an attempt to alter the standard for design patents . . . ." (Id. at 14-15.) In each case, Defendant concluded with the following response: "Subject to the general and foregoing objections, [Defendant] admits that <u>no feature of the D500,510 is dictated solely by function</u> or by the use or purpose of the article and the features can be altered without adversely affecting the article's utility and, therefore, denies this admission request." (Id. at 13-16 (emphasis added).)

As discussed in the preceding subsection, Defendant has failed to establish the irrelevance (at least at the discovery stage) of requests that explore the functionality of elements of the patented design, in light of Plaintiff's claim of design-patent invalidity and its related invalid-as-functional affirmative defense. Moreover, in the absence of any explanation or argument from

-12-

Defendant as to why it characterizes these requests as "vague and ambiguous" (id.), no reasonable basis exists to conclude that Defendant properly objected to Plaintiff's requests on that basis.

In opposing the instant Motion, Defendant also asserts that it "properly responded in good faith by admitting that no feature of the D500,510 design is dictated solely by use or purpose of the article and, therefore, **denied each admission request**." (Docket Entry 163 at 9 (first emphasis added).) This contention fails because "[a] denial must fairly respond to the substance of the matter," Fed. R. Civ. P. 36(a)(4); see also Lynn v. Monarch Recovery Mgmt., Inc., 285 F.R.D. 350, 363 (D. Md. 2012) (citing Wright, Miller, & Kane, supra, § 2260, for proposition that, "[i]t is expected that denials will be forthright, specific, and unconditional"). For the same reasons discussed above in the subsection addressing Defendant's answers to Plaintiff's interrogatories, Defendant's qualification of its denials with the phrase "no feature . . . is dictated solely by function" evades the requests for admission.

For instance, Plaintiff's eighth request for admission asks Defendant to admit or deny that, "[t]he hexagon design of the D500,510 allows a tool changer incorporating that design to handle more jobs at one station." (Docket Entry 159-1 at 13.) Defendant's response, that it denies the admission because "no feature of the D500,510 design is dictated solely by function or by

-13-

the use or purpose of the article and the features can be altered without adversely affecting the articles utility" (id. at 13-14), does not fairly respond to the substance of the matter. The request at issue does not ask whether the hexagon design could be altered; rather, it asks whether this particular design "allows a tool changer . . . to handle more jobs at one station," (id. at 13). If such design does not allow a tool changer to handle more jobs at one station (presumably, as compared to the prior art), Defendant can simply deny that request for admission, as its Response now suggests (incorrectly) that it has already done (see Docket Entry 163 at 9). Defendant's responses to the remaining contested requests for admission similarly fail to forthrightly deny the applicable statement. (See Docket Entry 159-1 at 14-16.)

Under these circumstances, Defendant must unconditionally respond to Plaintiff's requests for admission eight through twelve.

C. Expense-Shifting

Because the Court has granted Plaintiff's instant Motion, "the [C]ourt must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); see also Biovail Corp. v. Mylan Labs., Inc., 217 F.R.D. 380, 382 (N.D. W. Va. 2003) ("'The great operative principle of [Rule 37] is that the loser

-14-

pays.'" (quoting Rickels v. City of South Bend, 33 F.3d 785, 786 (7th Cir. 1994))); Fed. R. Civ. P. 36(a)(6) ("Rule 37(a)(5) applies to an award of expenses."). "But the [C]ourt must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

The Parties' filings in connection with the instant Motion do not address expense-shifting. (See Docket Entries 158, 159, 163, 168.) Accordingly, the Court now will order the Parties to do so.

### III. CONCLUSION

Plaintiff has established grounds for relief under Federal Rules of Civil Procedure 36(a)(6) and 37(a)(3)(B)(iii).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Docket Entry 158) is **GRANTED**, in that, on or before August 1, 2014, Defendant shall supplement its answers to Plaintiff's interrogatories numbered 22 through 24 and shall amend its answers to Plaintiff's requests for admission numbered eight through twelve.

**IT IS FURTHER ORDERED** that, on or before August 1, 2014, Plaintiff either 1) shall file a Notice with the Court renouncing any expense-shifting; or 2) shall serve Defendant with a statement setting out the reasonable expenses, including attorney's fees,

Plaintiff incurred in making the instant Motion. Failure by Plaintiff to comply with this Order will result in denial of any expense-shifting.

**IT IS FURTHER ORDERED** that, if Plaintiff timely serves such a statement of reasonable expenses, Defendant <u>shall</u> file, on or before August 15, 2014, <u>either</u>: 1) a Notice indicating its and/or its counsel's agreement to pay the claimed expenses; <u>or</u> 2) a Memorandum of no more than ten pages setting out Defendant's argument as to why the Court should not require Defendant and/or its counsel to pay such expenses (including any argument challenging the reasonableness of such expenses), along with a certification that, since the date of this Order, Defendant has attempted to confer in good faith with Plaintiff about resolution of the issue of expense-shifting. Failure by Defendant to comply with this Order will result in the Court ordering, upon the filing of a Notice by Plaintiff of its reasonable expenses as contained in the statement served upon Defendant, the payment of such expenses by Defendant.

**IT IS FURTHER ORDERED** that, on or before August 22, 2014, Plaintiff <u>shall</u> file a Response of no more than ten pages to any Memorandum timely filed by Defendant. Failure by Plaintiff to comply with this Order will result in denial of any expense-shifting.

**IT IS FURTHER ORDERED** that, on or before August 27, 2014, Defendant <u>may</u> file a Reply of no more than five pages to any Response timely filed by Plaintiff.

**IT IS FURTHER ORDERED** that, upon completion of the foregoing briefing or the time for such briefing, the Clerk shall refer this matter back to the undersigned Magistrate Judge for further action.

  /s/ L. Patrick Auld<br>
  <b>L. Patrick Auld</b><br>
  <b>United States Magistrate Judge</b>

July 25, 2014